UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| GREATER CLEVELAND AVENUE ) | Case No. 18-50410 |
| CHRISTIAN CHURCH ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| _____) | |

**OBJECTION BY APEX BANK TO MOTION BY DEBTOR FOR EXTENSION OF EXCLUSIVITY PERIOD TO FILE AND SOLICIT ACCEPTANCES OF PLAN OTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICE**

COMES NOW Apex Bank, through counsel, and objects to the Motion for Extension of the Exclusive Period for Debtor-In-Possession to File Plan of Reorganization and Disclosure Statement and Extension of Time in which to have the Plan of Reorganization Confirmed [DOC# 55] (the "Exclusivity Motion"), and in support hereof, shows the Court as follows:

1. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on April 19, 2018. Since the filing date, the Debtor has remained in possession of its property and its assets and has operated as a Debtor-In-Possession.

2. The Debtor owns and operates a church in Winston-Salem, North Carolina (the "Church Property"). In its bankruptcy schedules, the Debtor values the Church Property at $6,267,100.

3. Apex Bank is the largest creditor in this case, holding a secured claim against the bankruptcy estate in the amount of $3,300,299.35. Said claim is secured by the Church Property.

4. The secured claim of Apex Bank has matured according to its terms and is due and payable in full.

5. As noted in a financial analysis report filed by the Office of the United States Bankruptcy Administrator, in order to refinance or "work out" the existing loan of Apex Bank, the Debtor will need to be able to make monthly debt service payments of approximately $22,000 (based on a 30-year amortization at 7.0% interest). The Debtor does not have the cash flow to be able to afford such debt service. Accordingly, the Bankruptcy Administrator's report correctly states that the Debtor will need to increase income and lower expenses in order to be able to make reliable payments to Apex Bank and other creditors of the bankruptcy estate.

6. In the Exclusivity Motion, the Debtor states that it is actively working to decrease expenses and increase cash flow. The Debtor's monthly reports belie this statement. As outlined in the Bankruptcy Administrator's financial analysis, Bishop McCarter receives the following salary and incentives:

- Salary -- $99,000 yearly
- Anniversary Bonus -- $2,500 annually in April
- Housing allowance -- $57,000 annually
- Car allowance -- $14,820 annually
- Health Insurance -- $33,540 annually
- Love offerings – nonuniform gifts from the congregation. $9,517 for the months of April and May 2018.

7. Although the Bankruptcy Administrator's report suggests that Bishop McCarter's salary and compensation package may be excessive for a church in financial distress, the Debtor has filed to take such recommendations to heart. Despite evidencing a fundamental inability to service the secured debt of Apex Bank (let alone pay other estate creditors), Bishop McCarter continues to enjoy the fruits of a substantial prepetition compensation package. Instead of paying postpetition interest accrual to Apex Bank, Bishop McCarter continues to receive a car allowance in excess of $1,000 per month and a

housing allowance in excess of $4,000 per month. Instead of paying postpetition interest accruals to Apex Bank, Bishop McCarter continues to enjoy "love offerings" from the congregation amounting to thousands of dollars per month. Certainly, the parishioners of the Debtor are free to donate their personal funds as they see fit. However, at a time when the Debtor is struggling mightily to keep its financial head above water, one would think that the Debtor would encourage its parishioners to shore up the Debtor's bank account as opposed to that of Bishop McCarter. Certainly, Bishop McCarter could himself insist that all love offerings be paid into the Debtor's operating account.

8. The Debtor's recalcitrance or refusal to cut or otherwise modify the salary and incentive package of Bishop McCarter evidences the Debtor's lack of commitment to a workable and successful reorganization by the Debtor. In its Exclusivity Motion, the Debtor gives lip service to the need to cut expenses, but the Debtor's actions do not follow its words. Apex Bank does not dispute that Bishop McCarter may be an excellent clergyman and may very well be worth every dime that he is paid. However, at a time when extreme belt tightening is required, it would seem that Bishop McCarter's substantial compensation package should be reduced.

9. Apex Bank recognizes that requests by debtors for extensions of the exclusivity period to file a plan are commonly granted, especially with respect to a debtor's first extension request. That notwithstanding, Section 1121 of the Bankruptcy Code requires that a debtor affirmatively establish "cause" for any requested extension. As noted by one court, "[i]n cases involving uncomplicated issues and not unusually large debtors, requests for extensions of the exclusivity periods should not be granted routinely or as a matter of course without proof as to probably success in formulating a plan of reorganization . . ." In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

10. This is not a complicated bankruptcy case. No sudden or calamitous financial event preceded the Debtor's slide into bankruptcy. This case is strictly about cash flow and cash management. The Debtor's cash flow problems are not easily ameliorated. Like most community churches, the Debtor's life blood is tithing by parishioners. Without a substantial increase in membership and/or a substantial increase in the tithes of existing members, it is difficult to discern how the Debtor will successfully exit Chapter 11. If the financial performance of the Debtor over the first four months of this case is any indication, a successful reorganization by the Debtor is unlikely.

11. Of course, denial of the Exclusivity Motion does not deny the Debtor the right and ability to file a proposed reorganization plan. It simply means that other creditors, including Apex Bank, have the right to file a plan should they so desire.

12. Given the extreme financial headwinds facing the Debtor, the Debtor's lack of seriousness and focus in managing its expenses, and the lack of any realistic prospect of reorganization, denial of the Exclusivity Motion is appropriate and warranted.

WHEREFORE, Apex Bank requests that the Exclusivity Motion be denied and that that Apex Bank be granted such other and further relief as this Court deems appropriate and just.

Respectfully submitted, this the 31 day of August, 2018.

/s/ Daniel C. Bruton
DANIEL C. BRUTON
State Bar No. 22440
*Attorney for Apex Bank*
BELL, DAVIS & PITT, P.A.
P. O. Box 21029
Winston-Salem, NC 27120-1029
(336) 722-3700
dbruton@belldavispitt.com

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **OBJECTION BY APEX BANK TO MOTION BY DEBTOR FOR EXTENSION OF EXCLUSIVITY PERIOD TO FILE AND SOLICIT ACCEPTANCES OF PLAN** was filed electronically in accordance with the local rules and was therefore served electronically on the entities that have properly registered for such electronic service by CM/ECF or by mailing a copy of same by first-class postage prepaid mail as noted as follows:

Served by CM/ECF:

Samantha K. Brumbaugh
Ivey, McClellan, Gatton & Siegmund, LLC
PO Box 3324
Greensboro, NC 27402

William Miller
US Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401


This the 31st day of August, 2018.

/s/ Daniel C. Bruton
DANIEL C. BRUTON