UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| GREATER CLEVELAND AVENUE ) | Case No. 18-50410 |
| CHRISTIAN CHURCH ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |

## MOTION BY APEX BANK TO DISMISS OR CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)

COMES NOW Apex Bank, through counsel, pursuant to 11 U.S.C. § 1112(b), and moves that this Court either dismiss this bankruptcy case or convert the case to Chapter 7, and in support thereof, shows the Court as follows:

1. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on April 19, 2018. Since the filing date, the Debtor has remained in possession of its property and its assets and has operated as a Debtor-In-Possession.

2. The Debtor owns and operates a church in Winston-Salem, North Carolina (the "Church Property"). In its bankruptcy schedules the Debtor values the Church Property at $6,267,100.

3. Apex Bank is the largest creditor in this case, holding a secured claim against the bankruptcy estate in the amount of $3,300,299.35. Said claim is secured by the Church Property.

4. The bankruptcy case was initiated by the Debtor to fend off a pending foreclosure of the Church Property by Apex Bank.

5. The Debtor's monthly reports since the bankruptcy filing date reflect as follows:

- April 20-30 2018 – cash profit of $2,544.16[1]
- May 2018 – cash profit of $22,830.86
- June – cash profit of $2,014.55
- July 2018 – cash profit of $4,634.57.

6. Since the bankruptcy filing, the Debtor has paid Apex Bank the amount of $10,000 as adequate protection. Said payment was tendered on or about July 25, 2018 and is included in the profit/loss amounts for July 2018.

7. While the Debtor has positive cash flow in the approximate amount of $32,000, such positive cash flow comes at a time when the Debtor has not been servicing its secured debt to Apex Bank.

8. As noted in the BA's Financial Report [DOC# 51], in order to service the now matured indebtedness of Apex Bank, a thirty-year amortization at 7% interest would require a monthly payment of approximately $22,000. The Debtor does not have sufficient cash flow to meet such debt service requirements.

9. Pursuant to Section 1112(b) of the Bankruptcy Code, a Court shall dismiss a case for "cause." Section 1112(b)(4)(A) states that "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." As recognized by Judge James in In re Paterno, 511 B.R. 62, 66 (Bankr. M.D.N.C. 2014), "this is a two-fold inquiry, and the party seeking conversion bears the burden of proof by a preponderance of the evidence. . . . The first prong requires the Court to determine whether, post-petition, there has been a substantial or continuing loss to or diminution of the estate. This test is often met by showing that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief. This loss or decline in value must be either substantial or continuing, but

---

[1] According to a Financial Report filed by the Bankruptcy Administrator on July 27, 2018, for the entire month of April 2018, the Debtor incurred a loss in the amount of $3,267.96.

need not be both. When examining this prong, courts often look at the debtor's track record, including the financial prospects of the debtor and the financial records filed with the court." Regarding the rehabilitation prong of Section 1112(b)(4)(A), Judge James wrote: "Rehabilitation is a more demanding standard than reorganization, and is defined by whether the debtor will be able to reestablish its business on a firm, sound basis. Determining whether there is a likelihood of rehabilitation is not a technical test of whether the debtor can confirm a plan, but rather, whether the debtor's business prospects justify continuance of the reorganization effort." Id. at 68. a more demanding standard than reorganization

10. Since the inception of this bankruptcy case, the Debtor has exhibited a continuing loss to the estate. While the Debtor's monthly reports do reflect positive income, that is only because the Debtor is not servicing the secured debt of Apex Bank. If the Debtor were paying Apex Bank, the Debtor would not have sufficient income to meet its other ongoing financial responsibilities.[2]

11. Just as the Debtor continues to suffer a net loss, the Debtor also does not have a reasonable likelihood of rehabilitation in this case. The Debtor could not pay Apex Bank prepetition. The Debtor has not and cannot pay Apex Bank postpetition. There are no facts or circumstances that would demonstrate that the Debtor will be able to service Apex Bank's going forward.

12. As is recognized in the Bankruptcy Administrator's Financial Report, if the Debtor cannot cut back on its expenses and cannot find additional sources of income, the Debtor will continue to struggle. To date, it does not appear that the Debtor has cut its

---

[2] Even if a bankruptcy estate's cash flow may break even each month, if the debtor is accruing unpaid interest to prepetition secured creditors, then the debtor's estate is operating at a loss. See In re McTiernan, 519 B.R. 860, 866 (Bankr. D. Wyoming 2014).

expenses or that the Debtor's income has increased. The Bankruptcy Administrator's Financial Report rightfully recognizes that Bishop McCarter's salary and benefits package is "rather large" for a church in financial distress. Yet, Bishop McCarter's compensation package remains unchanged since the petition date. The Debtor's recalcitrance (or refusal) to cut or otherwise modify the salary and incentive package of Bishop McCarter evidences a lack of commitment by the Debtor to a workable rehabilitation.

13.    This is not a complicated bankruptcy case. This case is about cash flow and cash management. Unfortunately, the Debtor's cash flow problems are not easily ameliorated. Like most community churches, the Debtor's life blood is tithing by parishioners. Without a substantial increase in membership and/or a substantial increase in the tithes of existing members, it is difficult to discern how the Debtor will rehabilitate itself in Chapter 11. The Debtor's financial performance over the first four months of this case leads to the singular conclusion that the rehabilitation of the Debtor is unlikely.

WHEREFORE, Apex Bank respectfully requests that this case be dismissed or converted to Chapter 7.

Respectfully submitted, this the 4th day of September, 2018.

/s/ Daniel C. Bruton
DANIEL C. BRUTON
State Bar No. 22440
*Attorney for Apex Bank*
BELL, DAVIS & PITT, P.A.
P. O. Box 21029
Winston-Salem, NC 27120-1029
(336) 722-3700
dbruton@belldavispitt.com

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MOTION BY APEX BANK TO DISMISS OR CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)** was filed electronically in accordance with the local rules and was therefore served electronically on the entities that have properly registered for such electronic service by CM/ECF or by mailing a copy of same by first-class postage prepaid mail as noted as follows:

Served by CM/ECF:

Samantha K. Brumbaugh
Ivey, McClellan, Gatton & Siegmund, LLC
PO Box 3324
Greensboro, NC 27402

William Miller
US Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401

This the 4th day of September, 2018.

/s/ Daniel C. Bruton
DANIEL C. BRUTON